UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

GINA M. CAULEY,                     )
                                    )
        Plaintiff,                  )
                                    )
        v.                          )       CIVIL NO.  1:17cv416
                                    )
NANCY A. BERRYHILL, Acting          )
Commissioner of Social Security,    )
                                    )
        Defendant.                  )

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB), as provided for in the Social Security Act.  Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for DIB must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12 months. . . ."  42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an

impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2019.

2.  The claimant has not engaged in substantial gainful activity since October 9, 2013, the alleged onset date (20 CFR 404.1571 *et seq*.).

3.  The claimant has the following severe impairments: sacroiliac joint dysfunction syndrome, sacroiliitis, lumbosacral radiculopathy, obesity, asthma, bipolar disorder, post-traumatic stress disorder, and borderline personality disorder. (20 CFR 404.1520(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) but with the following limitations: she can lift and/or carry 10 pounds occasionally and frequently; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can never climb ladders, ropes, and scaffolds; she should avoid concentrated exposure to fumes, odors, dusts, gases, and other similar pulmonary irritants; she can understand, remember, and carry out simple instructions; she can make judgments on simple work related decisions; she can respond appropriately to supervision, co-workers, and usual work situations; and she can deal with changes in a routine work setting.

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.  The claimant was born on March 7, 1980 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 9, 2013, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19- 31).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability insurance benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed her opening brief on February 16, 2018. On March 30, 2018, the defendant filed a memorandum in support of the Commissioner's decision, to which Plaintiff replied on April 13, 2018. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be remanded.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that Step 5 was the determinative inquiry.

Plaintiff filed her application for disability benefits on March 6, 2014, alleging

disability beginning October 9, 2013. (Tr. 189-190). On behalf of SSA, the Indiana Disability

Determination Bureau (DDB) denied Plaintiff's application initially on April 11, 2014, and upon

reconsideration on August 6, 2014. (Tr. 121-129, 131-137). In response to a timely-filed request,

ALJ Stephanie Katich held a hearing on December 9, 2015. (Tr. 40-87, 138-139). Plaintiff and a

vocational expert, Amy Kutschbach, appeared and testified at the hearing. (Tr. 40). Plaintiff was

represented at the hearing by attorney Ann Trzynka. (Tr. 14). On February 28, 2016, ALJ Katich

issued a decision finding that Plaintiff was not disabled as defined in the Social Security Act. (Tr.

14-39).

Plaintiff asked SSA's Appeals Council to review the decision, and on December 13,

2016, the Appeals Council denied her request. (Tr. 1-7, 186-188). Thereafter, Plaintiff timely

filed her complaint in this Court pursuant to 42 U.S.C. § 405(g).

Plaintiff was 33 years old and considered a "younger person" as of October 9, 2013, the

date she alleged her disability began. (Tr. 88). She has an associate's degree in surgical

technology and has past relevant work as a surgical technologist. (Tr. 70, 220). That job is

classified by the Dictionary of Occupational Titles as a skilled job at light exertional level, but the

job was medium in exertion as Plaintiff performed the job. (Tr. 70).

Plaintiff testified that she stopped working in October 2013 due to her pain. At that time

she was working at Lutheran Hospital as a surgical technologist and was in so much pain that she

was crying at work and after her shifts, had to have other people do some of her jobs, and had

difficulty walking after she got home. (Tr. 54, 58-59). She was experiencing pain in her lower

back, mid-back, hip, and SI joint and was on a lot of pain medication. (Tr. 58). Her physician,

Mark Reecer, M.D., took her off work to see if she would improve, but Plaintiff reported that she

did not get better. (*Id.*).

Plaintiff testified that she was unable to work because she could only sit for a limited amount of time before needing to stand; throughout the day the length of time she could sit and stand gets shorter to the point where she needs to lie down to relieve the pain in her back and hip. (Tr. 50). She estimated that she could sit for about twenty minutes, walk around for about ten minutes, and return to sitting for about twenty minutes, and would then lie down for a couple of hours to relieve her pain. (Tr. 61). She noted that reaching pulled on her back and intensified her back pain. (Tr. 63-64).

Mentally, Plaintiff testified that she was abused as a child and had a long history of treatment dating back to high school and college. (Tr. 48). She felt medication helped with her mental conditions, but she noted that her bipolar swings got even worse when her pain was "really bad." (*Id.*). She testified that even when her pain is okay, she still gets mood swings up to a manic state and then on the other end where she is so depressed that she can't get out of bed. (Tr. 48-49). She noted that she was not comfortable going out in public due to things triggering a state where she would "go down in the dumps" or get "hyper." (Tr. 62).

She described good days and bad days and estimated that she had two good days out of seven. (Tr. 62-63). On a good day, she could meet a good friend for lunch or could drive to the store, which was about five minutes from her home, to pick up a few items like bread, milk, and cereal but could not lift more than ten pounds. (Tr. 62-63). She would still take all of her pain medications on good days and estimated her pain at a level four. (Tr. 62-63). On a bad day, she estimated her pain was at a level seven to eight and would lie down most of the day. On a bad day, her husband would take care of almost everything, and her mom, who lived two streets away,

would come over to help. (Tr. 63). She noted that she could not lift her son and required help from both her mom and husband. (Tr. 82). She had gone camping with her family at a state park about forty-five minutes away one time in the past year and required crutches when walking. (Tr. 64-66).

Plaintiff testified regarding procedures she underwent to relieve her pain, including two surgeries on her sacroiliac (SI) joints. She felt the recent SI joint surgery was helpful in relieving her SI joint pain, but her back pain had worsened and was more intense and constant. (*Id.*). Pain medications were helpful but did not take away all of her pain. (Tr. 50-51). She recently asked her doctor to increase her pain medication but her request was denied. (Tr. 51). Her pain and psychiatric medications made her extremely tired. (Tr. 82).

In May 2012, Plaintiff presented to Physical Medicine Consultants (PMC) and saw Mark Reecer, M.D., who is board certified in physical medicine and rehabilitation and pain management. (Tr. 1175-1178). At her initial appointment, she reported right-sided low back pain that radiated into the right gluteal region into the groin and down the right leg to the mid-calf. (Tr. 1175). The pain had been intermittent for several years but worsened significantly in the last year when she was pregnant. (Tr. 1175-1178). Dr. Reecer and Julie Risley, PA-C, prescribed pain medications which were not completely effective at controlling Plaintiff's pain. (Tr. 1133, 1141, 1188). They also referred her for several courses of physical therapy and to other specialist physicians regarding her treatment options. (Tr. 1188). Plaintiff had at least thirty-three visits with Dr. Reecer and Ms. Risley during the time period between May 2012 and November 2015. (Tr. 1111, 1113, 1117, 1119, 1121, 1123, 1124, 1125, 1126, 1127, 1130, 1132, 1133, 1134, 1135, 1136, 1137, 1138, 1141, 1144, 1147, 1148, 1149, 1150, 1153, 1157, 1162, 1163, 1166, 1169,

1170, 1173, 1175).

Dr. Reecer also saw Plaintiff at the Orthopaedic Hospital on at least eleven occasions for surgical epidural steroid SI joint and lumbar injections. He performed injections on the following dates: May 2012 (Tr. 1174-1175); June 2012 (Tr. 1171-1172); twice in August 2012 (Tr. 1164-1165, 1167-1168), twice in October 2012 (Tr. 1158-1161); February 2013 (Tr. 1151-1152); June 2013 (1145-1146); August 2013 (1139-40); August 2014 (1128-1129); and September 2015 (Tr. 1115-1116). Plaintiff generally reported that the injections offered only temporary relief. (Tr. 1127, 1157, 1162, 1169, 1170).

In December 2012, Dr. Reecer performed a diagnostic discogram of the lumbar spine which was negative, and he referred Plaintiff for a surgical consultation with Robert Shugart, M.D. at Fort Wayne Orthopaedics (Tr. 1154-1155). Dr. Shugart did not recommend surgery and thought Plaintiff's symptoms were myofascial in nature. (Tr. 512).

In October 2013, Plaintiff continued with low back pain and weakness in the right leg, which were worse when she worked the weekend. She developed anxiety on Fridays before she had to go to work knowing that her symptoms were going to flare. (Tr. 1137). Dr. Reecer recommended remaining off work for six weeks to stop the cycle of re-aggravating her symptoms. (Tr. 548-551, 1137). Plaintiff returned in December 2013 and had been off since October 9, 2013, and was continuing to struggle, particularly if she was too active. (Tr. 1136). Dr. Reecer referred Plaintiff to Daniel Nolan, M.D. for evaluation regarding a spinal cord stimulator and a second opinion on treatment. (Tr. 1136).

In March 2014, Dr. Reecer provided a medical opinion regarding Plaintiff's physical work-related abilities and indicated that she could lift ten pounds occasionally and frequently,

stand and walk about four hours in an eight-hour period and sit for about four hours. (Tr. 703). He

estimated that she could stand and sit each thirty minutes at a time before needing to change

positions and that she needed to walk around every thirty minutes for about ten minutes. (Tr.

702). He estimated that Plaintiff would need to lie down about every two to three hours and that

she could occasionally twist, bend, crouch, and climb stairs but never climb ladders. (Tr. 703). He

reported that she would very occasionally need to walk with a cane and estimated that she would

likely be absent from work more than four days per month due to her impairments or treatment.

(Tr. 703).

In September 2014, Dr. Reecer referred Plaintiff to Dr. Reilly with the Indiana Spine

Group regarding her SI joint symptoms. (Tr. 1127). Plaintiff returned to Dr. Reecer in December

2014 after undergoing the right SI joint fusion surgery with Dr. Reilly, and reported that she was

initially better but then felt a pop and got a little worse. She reported that most of her pain seemed

to be on the left side at that time. (Tr. 1125). At a return visit in November 2015, Plaintiff had

undergone surgical fusion of her left SI joint one month earlier and was doing fairly well but

continued to have pain. (Tr. 1111). She reported that symptoms were worse with standing and

walking or sitting too long. Lifting something as simple as a gallon of milk reproduced pain into

the left leg and reaching significantly bothered both sides. (Tr. 1111-1112).

In November 2015, Dr. Reecer provided permanent restrictions including lifting, pushing,

and pulling occasionally ten pounds, occasional bending, twisting, squatting/kneeling, no

climbing, intermittent sit and stand per tolerance, and no reaching. (Tr. 1110). In January 2016,

Dr. Reecer also provided a narrative opinion regarding Plaintiff's treatment and functioning. (Tr.

1188- 1190). He addressed her difficulties with ambulation, particularly following her SI joint

fusion surgery, and her work-related limitations due to severe pain. (*Id*.)

On January 20, 2014, Plaintiff presented to Daniel Nolan, M.D. at Interventional Pain Consultants regarding a spinal cord stimulator (SCS). (Tr. 604, 713-715). He diagnosed chronic pain syndrome, right radicular pain, and SI dysfunction and recommended seeking approval for a spinal cord stimulator. (Tr. 714).

On January 31, 2014, Plaintiff underwent a psychological evaluation with Daniel Hauschild, Psy.D., to determine if she was a candidate for a SCS and for pain management treatment planning. (Tr. 622). Plaintiff reported that she hoped to relieve the pain traveling down her leg with the stimulator and understood that the procedure would not likely relieve her SI joint pain. (Tr. 624). Dr. Hauschild diagnosed pain disorder associated with psychological factors and a general medical condition; major depressive disorder, recurrent moderate; and post-traumatic disorder. (Tr. 625). He concluded that from a psychological standpoint, Plaintiff did not present with any contraindications to proceeding with a SCS. (Tr. 626). He observed that Plaintiff has an extensive psychiatric history which would continue to cause ongoing difficulties and noted that she was well-engaged in psychotherapy and pursuing appropriate medication management. (*Id*.). Dr. Haushchild also reported that Plaintiff's physical pain and resulting debility have contributed significantly to exacerbating her depression. (Tr. 622-626).

In March 2014, Plaintiff underwent surgical implantation of a spinal cord stimulator trial with Dr. Nolan. (Tr. 709-710). In April 2014, Dr. Nolan implanted a permanent spinal cord stimulator for chronic pain syndrome and lumbar radiculopathy. (Tr. 723-724). At a return visit in May 2014, Plaintiff reported that the stimulator was helping all pain except SI joint pain. Her symptoms were exacerbated by standing and walking and relieved by ice, rest, and opioid

analgesics. (Tr. 746).

In October 2014, Plaintiff presented to Thomas Reilly, M.D. at Indiana Spine Group at the request of Dr. Reecer. She reported that she underwent spinal cord stimulator placement that resolved some of her right lower extremity pain complaints. (Tr. 1101). Dr. Reilly reviewed imaging and records and diagnosed sacroiliac joint dysfunction syndrome, particularly right, and sacroiliitis sacroiliac joint. Dr. Reilly discussed treatment options and noted that Plaintiff was leaning toward surgery because nothing else had worked and she was "quite miserable." (*Id.*).

On November 28, 2014, Plaintiff was admitted to the hospital overnight, and Dr. Reilly performed right SI joint arthrodesis with instrumentation. (Tr. 1093-1095). At a follow-up visit in December 2014, Plaintiff reported she was doing great with no pain the first week or two but had a flare of the SI joint pain when bending over to lift something. (Tr. 1092). Dr. Reilly reported that she was toe touch weight-bearing on the right side. (*Id.*). At a return visit in January 2015, Plaintiff reported that she had unsteadiness and still used a walker outside the house for balance issues. (Tr. 1091). Since the surgery she had several falls and seemed to land on her right buttocks area, but she reported her pain was doing better. (*Id.*). Dr. Reilly indicated that the healing process could take 6-12 months and recommended therapy to work on gradual strengthening and ambulation/balance issues. (Tr. 1091).

In August 2015, Plaintiff had a consultation with Dr. Reilly and felt the severe right buttocks and right leg pain was about 90% better since her surgery, but she had been having increasing pain and numbness in the left buttocks area and thigh which were worse with sitting and bending. (Tr. 1086). She had gone through physical therapy, but reported it wasn't really helping and injections helped dramatically but were only transient. (*Id.*). Plaintiff wished to

proceed with surgery on the left SI joint. (*Id.*). On October 5, 2015, Dr. Reilly performed a left SI joint arthrodesis. (Tr. 1082-1083).

Plaintiff consistently and regularly participated in physical therapy as recommended by Dr. Reecer for sacroiliac dysfunction and lumbago during the period from 2012 to 2015. (Tr. 638-700, 818-861). On November 23, 2012, physical therapist, Nicole Bobay, with Indiana Physical Therapy, summarized Plaintiff's progress in therapy and noted her progress had plateaued and relief appeared merely temporary. (Tr. 362-405, 1066).

Plaintiff participated in several courses of physical therapy during the period 2014 through 2015 at Mallers & Swoverland. (Tr. 819-821, 827-828, 842-843). An initial evaluation for sessions beginning in August 2015 indicate that Plaintiff experienced chronic lower back pain over the years, and that she had a new onset of left knee pain, which was evaluated at treated at Fort Wayne Orthopedics in July 2015. (Tr. 824, 1074-1075). At that time she had difficulty walking and sitting for more than ten minutes, and she was using crutches until a recent doctor visit. (Tr. 824). An examination demonstrated decreased range of motion and muscle strength in the lumbar spine, positive quadrant test, and tenderness to palpation to the bilateral SI joints, paraspinals, and left knee. (Tr. 825). She presented with a strongly positive profile for spinal hypermobility with poor neuromuscular stability at the trunk, pelvis, and hips contributing to stresses to the spinal facet joint and supportive ligamentous tissue. (*Id.*) Upon discharge from physical therapy on August 20, 2015, Plaintiff was feeling better overall and was planning to have a fusion on her left SI joint (Tr. 819). The knee had improved and was less painful, but she continued with reduced range of motion and strength in the lumbar spine as well as positive quadrant test and tenderness to palpation to the SI joints and paraspinals. (Tr. 820).

Plaintiff received mental health treatment at St. Joseph Psychiatric Care, including psychotherapy and medication management during the period from September 2008 to October 2011. (Tr. 862-884). She returned for treatment in January 2014 and was very angry that no one called her with a response to her request for help. (Tr. 717). In January 2014, Plaintiff reported to her primary care physician, Justina Girod, M.D. that she felt that she was "swinging" from her bipolar and requested a referral for a new psychiatrist. (Tr. 554).

In April 2014, Plaintiff presented for a psychiatric evaluation at Park Center and reported that she felt her medications needed to be adjusted due to mood fluctuation. (Tr. 785-789). Plaintiff presented with mood dysregulation, depression, anxiety, irritability and reported some hypomanic periods with poor impulse control and intrusive thoughts of past abuse with hypervigilance and paranoia. (Tr. 787-788). Diagnostic impressions included bipolar I, most recent episode depression, severe without psychotic features, post-traumatic stress disorder, and borderline personality. (Tr. 787). She was instructed to continue medications including Cymbalta, Wellbutrin, and Xanax, to slowly resume Lamictal, and to trial Periactin for nightmares. (Tr. 788).

In addition to continuing with medication management at Park Center, Plaintiff also participated in individual and group therapy sessions with DBT4 skills training. (Tr. 791-798, 886-914). At a medication management visit in September 2014, Plaintiff reported that she had been in a lot of pain and missed some DBT sessions and had some days of being down and crying. (Tr. 943). She felt Cymbalta was not effective for mood or pain and wished to go back to Zoloft. (*Id*.). Catherine Duchovich, CNS-BC adjusted several medications at that visit. (Tr. 946-948). In March 2015, the medication Latuda was added and Lamictal and Buspar were

discontinued. (Tr. 1026). In April, Plaintiff reported that the change with Latuda had been good, but in August she reported that she unable to afford this medication, so it was discontinued and Abilify was added. (Tr. 996, 999, 1014). She reported in September 2015, that her emotions had been "up and down" and that her pain had "not been okay." (Tr. 996). She felt more depressed and anxious and was feeling lonely since not interacting with friends due to pain. (*Id.*). In October 2015, Ms. Duchovich completed a mental medical source statement regarding Plaintiff's mental impairments and limitations. (Tr. 1104-1108).

In July 2014, B. Whitley, M.D., a non-examining physician, evaluated Plaintiff's claim on behalf of the Indiana DDB. Dr. Whitley indicated that Plaintiff's medically determinable impairments could reasonably be expected to produce her pain and other symptoms, and that the statements about the intensity, persistence, and functionally limiting effects of the symptoms were substantiated by the objective medical evidence alone. (Tr. 94). In assessing her physical residual functional capacity (RFC), Dr. Whitley determined that Plaintiff could do light work involving lifting up to twenty pounds occasionally, ten pounds frequently, sitting six out of eight hours and standing and/or walking six out of eight hours. (Tr. 94). He also found that Plaintiff could occasionally climb ramps, stairs, ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, and crawl. (Tr. 95). In April 2014, Ann Lovko, Ph.D. evaluated Plaintiff's mental impairments on behalf of the state agency and found that she had moderate difficulties with maintaining concentration, persistence or pace, and mild difficulties with social functioning and restriction of activities of daily living. (Tr. 93). Dr. Lovko concluded that Plaintiff retained the mental abilities to understand, remember, and carry-out unskilled tasks, relate on at least a superficial basis on an ongoing basis with co-workers, and supervisors, and attend to tasks for

sufficient periods of time to complete tasks and manage the stresses involved with work. (Tr. 97).

In August 2014, another non-examining state agency reviewer, J.V. Corcoran, M.D., affirmed the

prior RFC assessment from Dr. Whitley upon reconsideration. (Tr. 109-111). Another state

agency psychologist, Dr. B. Randal Horton, Psy.D., affirmed the mental assessment from Dr.

Lovko. (Tr. 108, 111-113). The state agency last received evidence in July 2014 for the

reconsideration review. (Tr. 102-107). Consequently, records from Indiana Spine Center

concerning Plaintiff's SI fusion surgeries were not available. (Tr. 1081-1102). Other significant

records and medical opinions, including from Dr. Reecer and Park Center, were also not available

for the state agency review. (Tr. 885-960, 985-1064, 1103-1108, 1109-1178, 1187-1190).

 In support of remand, Plaintiff first argues that the ALJ failed to properly weigh the

opinion evidence. Plaintiff claims that there is treating physician opinion evidence in the record

that is entitled to controlling weight and establishes by preponderance of the evidence1that

Plaintiff is disabled. The opinions are from Plaintiff's treating physician, Dr. Reecer, who is

board certified in physical medicine and rehabilitation and pain management. Plaintiff further

claims that the ALJ also failed to properly weigh the medical opinions from Catherine

Duchovich, PA-C, a certified physician assistant at Park Center who evaluated and treated

Plaintiff's mental health impairments.

 A treating physician's opinion regarding the nature and severity of a medical condition is

entitled to controlling weight if it is well supported by medical findings and is not inconsistent

with other substantial evidence in the record. *Clifford*, 227 F.3d at 870; 20 C.F.R. §404.152;

Social Security Ruling 96-2p.11 The ALJ must consider a variety of factors, including whether a

physician is a treating or examining physician; the length, nature, and extent of the treatment

relationship; the physician's specialty; and the consistency and supportability of the physician's opinion. *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996); 20 C.F.R. § 404.1527. The ALJ must always explain and give good reasons for the weight given the opinion of the treating source, and he must not substitute his own judgment for the physician's opinion without relying on other medical evidence or authority in the record. *Clifford*, 227 F.3d at 870; 20 C.F.R. § 404.1527. Consistent with the Commissioner's regulations, the Seventh Circuit has ruled that a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight. *See Campbell v. Astrue*, 627 F.3d 299, 305-06 (7th Cir. 2010).

Plaintiff points out that Dr. Reecer provided multiple opinions regarding Plaintiff's conditions over time with the earliest opinion dating back to October 2013 when he took Plaintiff off work temporarily due to lower back pain and SI joint dysfunction. (Tr. 548-551,1137). In March 2014, Dr. Reecer assessed more specific limitations concerning Plaintiff's work-related abilities and determined *inter alia* that she had the ability to stand/walk for four hours and sit for four hours with the need to shift at will from sitting or standing/walking, and lie down every two to three hours. He also indicated that Plaintiff would likely be absent from work more than four days per month. (Tr. 702-703). In November 2015, Dr. Reecer provided permanent work restrictions including many of the previous restrictions from March 2014 but also added no reaching. (Tr. 1110). Finally, in January 2016, Dr. Reecer provided a narrative opinion concerning Plaintiff's difficulties with ambulation and need to use an assistive device, particularly since her November 2014 SI joint fusion surgery, and reiterated his opinion that Plaintiff's pain precludes her from sitting, standing or walking for prolonged periods and that she needs to lie down intermittently to obtain relief. (Tr. 1189). He also noted that lifting and reaching aggravate

her back pain and that due to her impairments and pain medications she would be unable to sustain even simple work on a full-time basis. (*Id*.)

The ALJ gave "some weight" to Dr. Reecer's opinion from October 2013 taking Plaintiff off work and to his opinions in March 2014 and November 2015 regarding her restrictions. (Tr. 27-28). The ALJ discounted the October 2013 opinion because it was intended to be temporary, and the ALJ claimed that it was directed only at Plaintiff's job as a surgical technician. (Tr. 27). The ALJ rejected most of the restrictions provided in the March 2014 and November 2015 opinions for the following reasons: (1) the longitudinal evidence of improved gait, normal muscle strength, and negative straight leg raising did not support the severity of the limitations; (2) Dr. Reecer "relied quite heavily on subjective report of limitations provided by the claimant, and seemed to accept as true most, if not all, of what the claimant reported"; (3) there are minimal complaints of reaching in the record; and (4) the November 2015 restrictions were issued less than one month after Plaintiff's second SI joint arthrodesis.

The ALJ adopted some of the postural restrictions and the limitation to lifting ten pounds as indicated by Dr. Reecer because she thought these restrictions "remained relatively constant" and were "well supported by the evidence." (Tr. 28). Yet, most of the limitations that Dr. Reecer indicated remained consistent, including the limitations with standing, walking, and siting, the need to alternate positions, and lie down intermittently to relieve pain. (Tr. 702-703, 1110, 1189).

The ALJ gave "little weight" to Dr. Reecer's opinions rendered in January 2016. (Tr. 20-21, 28). The ALJ claimed that the opinion concerning Plaintiff's difficulties with ambulation and need to use an assistive device was inconsistent with Dr. Reecer's own records, his prior opinion concerning the need to occasionally use an assistive device, and physical therapy records.

(Tr. 20-21, 28). The ALJ also claimed the opinion was "less persuasive" because it consisted of "vague restrictions." (Tr. 28).

With respect to the October 2013 opinion, Plaintiff acknowledges that the ALJ is correct that it was intended to be temporary at the time it was issued and was directed at her job as a surgical technician. Plaintiff argues, however, that Dr. Reecer's later opinions from March 2014, November 2015, and January 2016 reflect that Plaintiff was limited on a longer-term basis and would be precluded not only from working as a surgical technician, but that she had limitations precluding other work as well. (Tr. 702-703, 1110, 1188-1189). The ALJ thought negative straight-leg raising, normal strength, and an allegedly improved gait following surgery undermined Dr. Reecer's opinion. (Tr. 27-38). Plaintiff contends that the ALJ has taken an impermissible "sound-bite" approach to reviewing the evidence and was inappropriately selective in choosing evidence on which to base her opinion. (Tr. 25, 27). *Scrogham v. Colvin*, 765 F. 3d 685, 698 (7th Cir. 2014).

For example, the ALJ is correct that Dr. Reecer noted in April 2015 that Plaintiff's gait and station were "much improved" after her November 2014 right SI joint surgery; however, the same office visit notes that Plaintiff was planning to return to Dr. Reilly concerning her left SI joint because the majority of her symptoms were now left-sided and she was continuing to use a cane and, intermittently, a walker. (Tr. 1121). Dr. Reecer also explained that a note reflecting a "normal gait and station" was based on the ability to walk a few steps in the examination room. (1189). In January 2016, he clarified that Plaintiff was using a walker at her November 2015 appointment following her October 2015 left SI joint fusion surgery. (*Id*.).

Plaintiff maintains that Dr. Reecer's notes and those from other providers reflect that

Plaintiff has often required an assistive device for ambulation, particularly after her SI joint fusion surgery in November 2014. In April 2014, Dr. Reecer noted that Plaintiff uses a cane or even a walker intermittently when her pain levels are high. (Tr. 1121). In October 2014, he noted that Plaintiff used a wheelchair when she went to the zoo, had been using a cane more, and sometimes used a wheeled walker with a seat so she could sit down. (Tr. 1130). In December 2014 and January 2015, Dr. Reecer noted that Plaintiff was using a walker. (Tr. 1124). Park Center notes from December 2014, also indicate that Plaintiff was unable to ambulate without a walker. (Tr. 919). In February 2015, Plaintiff reported to Dr. Reecer that she was not using the walker as much and she was given paperwork for a handicap parking permit. (Tr. 1123). In April 2015, she was continuing to use a cane or even a walker intermittently at home when pain levels were high. (Tr. 1121). In June 2015, Dr. Reilly noted that Plaintiff continued to use a walker about three times a month when she experienced a flare of her left-sided pain. (Tr. 1089). In July 2015, she was using crutches at an appointment at Fort Wayne Orthopedics. (Tr. 1074). A September 2015 note from Park Center indicates she was using a cane. (Tr. 989).

With regard to "normal muscle" strength and other medical findings, physical therapy records include specific examination documented areas of reduced strength in Plaintiff's lumbar spine. At an initial physical therapy evaluation in August 2015, Plaintiff had difficulty walking and sitting for more than ten minutes, and she had decreased strength and motion in the lumbar spine, positive quadrant test, and tenderness on with palpation to the bilateral SI joint and to the paraspinals. (Tr. 824-825). Dr. Nolan and Dr. Reilly, who provided surgical treatment options, also both noted the temporary nature of the relief provided from medications, physical therapy, and injections. (Tr. 1095, 1101).

Plaintiff also underwent progressive surgical treatments due to ongoing pain and difficulties, including spinal cord stimulator placement in April 2014, a right SI joint fusion in November 2014, and a right SI joint fusion in October 2015. (Tr.723-724, 10832-1083, 1093-1095). Dr. Reilly's note from October 2015 reflects that Plaintiff was experiencing left buttock and thigh/leg pain which was progressively worsening despite conservative care and that she was quite miserable and wished to proceed with surgery. (Tr. 1084-1085). At a follow-up visit in November 2015 with Dr. Reecer, just one month prior to the ALJ hearing, Plaintiff continued to experience pain, predominantly across the back above the SI region, and her symptoms were worse with standing and walking or sitting too long. She would typically lie down in an almost a fetal position for a couple of hours which would give her fairly decent benefit. (Tr. 1111). Given the long-standing nature of Plaintiff's impairments and pain persisting after multiple surgeries and treatment, Plaintiff argues that the fact that Dr. Reecer provided permanent restriction a month after surgery is not a good reason for the ALJ to reject the opinion. Dr. Reecer's records also note that reaching aggravated Plaintiff's back pain, yet the ALJ failed to explore this before rejecting the opinions.

Plaintiff argues that the ALJ's error equating certain medical findings to non-disability is compounded by her failure to properly consider Plaintiff's chronic pain disorder at step two. (Tr. 19-20). Plaintiff points out that not only did Dr. Reecer diagnose chronic pain syndrome but Dr. Nolan did also. (Tr. 707-708, 723, 1132-1134, 1188). Plaintiff has also sought out and undergone multiple invasive procedures to treat her chronic pain in addition to taking strong pain medications. And, as countless cases recognize, the etiology of extreme pain is often unknown, and can be severe and disabling even in the absence of "objective" medical findings

demonstrating a physical condition that normally causes pain of the severity claimed by the applicant. *Carradine v. Barnhart*, 360 F. 3d 751, 753 (7th Cir. 2004).

Plaintiff concludes that the ALJ's analysis of the symptom testimony is also flawed and so too is ALJ's decision to discount Dr. Reecer's opinion for relying on Plaintiff's own report of abilities. (Tr. 28). Importantly, Dr. Reecer explained that his opinions in March 2014 regarding Plaintiff's limitations were not based solely on self-reports of functioning but also on medical findings from examinations, imaging reports, and reasonably expected limitations from her impairments. (Tr. 1189).

Plaintiff further argues that, in affording the opinions of Dr. Reecer "little weight," the ALJ also misstates the standard for evaluating the opinions. The ALJ claimed that the "weight given to such conclusions depends only on the extent to which they are supported by specific and complete clinical findings and are consistent with the entire record." (*Id.*). The ALJ cited Social Security Ruling 96-5p12 which pertains to evaluating medical opinions on issues reserved to the Commissioner, but the standard does not require "specific and complete clinical findings." Instead it requires an evaluation based on "supportability" and "consistency with the record as a whole." Social Security Ruling SR 96-5p.

Plaintiff contends that the ALJ's misstatement of the standard is harmful error because the ALJ failed to perform the correct legal analysis of the medical opinions. Plaintiff argues that Dr. Reecer's opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with the other substantial evidence in the case record, entitling them to controlling weight as described in 20 C.F.R. §404.1527. Had the ALJ afforded the opinions controlling weight, she would have found disability at step five based on the testimony

of the vocational expert who testified that an individual is not permitted to leave the work station every thirty minutes or lie down during the workday. (Tr. 78). The vocational expert also testified that employers would tolerate one or two absences in a month but not on a consistent basis. (Tr. 77).

Additionally, Plaintiff notes, even if there were "inconsistencies" weighing against the opinions, the ALJ was required to consider the factors set forth in 20 C.F.R. § 404.1527(c) in determining the weight to be given to the opinions: the length, nature and extent of the treatment relationship, the supportability of the opinion by medical evidence, the consistency of the opinion with the record as a whole, and whether the medical source is a specialist. *Scrogham*, 765 F.3d at 697. Plaintiff claims that the ALJ failed to appropriately consider these factors in weighing the opinions. Dr. Reecer is a treating source with specialties relevant to Plaintiff's disabling conditions. Plaintiff has a lengthy treatment history with Dr. Reecer dating back to 2012, and she has had at least thirty-three office visits with him and he has performed injection surgeries on at least eleven occasions. He has also referred her to other specialists for surgeries and to physical therapy and monitored her progress with these treatments. Plaintiff concludes that the "reasons" the ALJ offers are not "good reasons" for discounting the treating source opinions from Dr. Reecer and that the ALJ impermissibly relied on her own lay intuition concerning Plaintiff's limitations in formulating the RFC finding. *Rohan v. Chater*, 98 F.3d 966, 970-971 (7th Cir. 1996) (ALJs are legal professionals, not doctors). Plaintiff further argues that the ALJ failed to consider Plaintiff's chronic pain syndrome in assessing her limitations and that the opinions from non-examining state agency physicians do not by themselves suffice as substantial evidence to reject an examining physician opinion. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003).

Plaintiff reiterates that the state agency reviewers lacked important medical evidence, including the SI joint arthrodesis surgeries, when they reviewed Plaintiff's claim. Plaintiff concludes that the ALJ's analysis is not sufficient to satisfy the Commissioner's own rules regarding treating source evidence and falls far short of building the "logical bridge" required by the Seventh Circuit. *Schmidt v. Barnhart*, 395 F .3d 737, 744 (7th Cir. 2005).

In response, the Commissioner has failed to defend the ALJ's harmful legal error in misstating and misapplying the applicable standard for evaluating and affording controlling weight to medical opinion evidence. The standard does not, as the ALJ stated, require "specific and complete clinical findings." (Tr. 28). Rather, adjudicators are required to consider whether treating source medical opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with other substantial evidence" in the case record. 20 C.F.R. 404.1527(c)(2). Because the ALJ misstated this standard, there is no assurance that she properly considered whether Dr. Reecer's opinions were entitled to controlling weight. Thus, remand is required.

As the ALJ did not afford controlling weight to Dr. Reecer's opinions, she was required to consider the regulatory factors described in 20 C.F.R. § 404.1527(c) in deciding how much weight to give his opinions. *Gerstner v. Berryhill*, 879 F.3d 257, 263 (7th Cir. 2018). The Commissioner did not respond to Plaintiff's argument that the ALJ erred by failing to apply these factors and apparently concedes this error. This omission is harmful legal error given the many factors lending support to Dr. Reecer's opinions. Dr. Reecer has medical specialties relevant to Plaintiff's disabling impairments as he is board certified in physical medicine and rehabilitation and in pain management. He has also treated Plaintiff for about three years and saw

her for treatment on at least thirty-three occasions. His opinions are also supported by explanations. (Tr. 702-703, 1188-1189).

The Commissioner attempts to defend the ALJ's rejection of Dr. Reecer's opinions by arguing that the ALJ allegedly considered medical evidence inconsistent with the opinions. Specifically, the Commissioner claims that the evidence contradicted Dr. Reecer's opinion that Plaintiff would need to lie down at unpredictable intervals and be absent more than four days a month due to her symptoms and treatment. However, Defendant has failed to explain how the findings the ALJ cited (e.g., negative straight leg raising, normal strength and improved gait following surgeries) are inconsistent with Dr. Reecer's opinions about the need to lie down or be absent from work.

The Commissioner has failed to refute Plaintiff's argument that the ALJ has taken a "sound-bite" approach to reviewing the evidence and that she was inappropriately selective in choosing evidence on which to base her opinion. *Gerstner*, 879 F.3d at 261-262; *Scrogham v. Colvin*, 765 F.3d 685, 698 (7th Cir. 2014). For example, there are many findings supporting Dr. Reecer's opinions, including references to Plaintiff's ongoing gait difficulties and chronic pain and limitations. The Commissioner also failed to respond regarding the ALJ's error in failing to consider the impact of Plaintiff's chronic pain disorder.

The Commissioner argues that the ALJ properly relied on the state agency physicians' opinions in rejecting Dr. Reecer's opinions and in formulating her RFC, but this argument is flawed for multiple reasons. First, as noted above, the opinions of non-examining state agency physicians do not by themselves suffice as substantial evidence to reject an examining physician opinion. Second, the state agency medical consultants never reviewed significant portions of the

medical evidence. For example, Plaintiff underwent surgical arthrodesis of both SI joints after the state agency reviewed her case. The Seventh Circuit recently issued two decisions finding reversible error where an ALJ relied on outdated assessments in the face of new and significant medical evidence. *Akin v. Berryhill*, No. 17-1802, 2018 WL 1616717, at *3 (7th Cir. April 4, 2018); *Moreno v. Berryhill*, 882 F. 3d 722, 728 (7th Cir. 2018). In the present case, the ALJ was unqualified to assess the impact of the SI joint arthrodesis surgeries on Plaintiff's pain and functioning. The state agency medical consultants' assessments also fail to contradict Dr. Reecer's opinion concerning anticipated absences and the need for unscheduled breaks because these consultants did not provide opinions directly addressing those issues. For all of these reasons, remand is appropriate.

Next, Plaintiff argues that the ALJ afforded "little weight" to opinions provided by Catherine Duchovic, CNSBC, who treated Plaintiff through Park Center. (Tr. 29). Ms. Duchovic indicated that Plaintiff has bipolar I disorder, trauma-related PTSD, and borderline personality disorder, with a persistent level of low anxiety and that her physical pain heightened her psychiatric condition. (Tr. 1104-1108). Ms. Duchovic opined that Plaintiff's pain affected her ability to function and that she could maintain attention, maintain regular attendance, and could perform at a consistent pace for less than 70% of the time. (*Id.*). She also estimated that Plaintiffs's impairments or treatment would cause her to be absent from work more than four days per month. (*Id.*).

The ALJ offered three reasons for affording the opinion "little weight": (1) the opinion is inconsistent with mental status findings and good response to treatment; (2) Ms. Duchovich reported "pain" as the reason for many of the limitations and this is outside her area of expertise;

and (3) the opinion is inconsistent with Plaintiff's long history of working despite her mental health impairment. (Tr. 29). Plaintiff argues that, although Plaintiff noted some improvement with treatment, even the mental status findings that the ALJ cites within the Park Center records contradict the ALJ's characterization of the mental health findings as a reason to discount Ms. Duchovic's opinions. (Tr. 26). Park Center examinations reflect Plaintiff often presented as depressed, anxious, with irritable mood, helpless, hopeless, hypervigilant, tearful, withdrawn, and with a flat affect. (Tr. 768, 778, 918, 927, 936, 945, 954). Plaintiff also argues that, Ms. Duchovic's citation to "pain" does not render the opinion outside her area of expertise because the source of pain may have psychological origins and can alone be disabling even when its existence is unsupported by objective evidence. *Carradine v. Barnhart*, 360 F. 3d 751, 753-754). ("If pain is disabling, the fact that its source is purely psychological does not dis-entitle the applicant to benefits."). Park Center records also note observation of Plaintiff's pain on multiple occasions. (Tr. 768, 786, 916, 918, 935, 937, 943, 953, 987, 996, 1006. 1042, 1053). Finally, Plaintiff argues that the fact that she worked in the past with her mental health impairment fails to account for the impact of her worsening physical condition and pain in combination with her mental impairments.

Plaintiff contends that the ALJ has failed consider Ms. Duchovic's opinion consistent with criteria set forth in Social Security Ruling 06-03p,13 and the rejection of her opinions is not supported by a well-reasoned explanation. Plaintiff concludes that the ALJ's errors in evaluating the opinions are harmful in light of the testimony of the vocational expert and the ALJ's acknowledgement that the limitations would be work-preclusive. (Tr. 77).

In response, the Commissioner's fails to show that the ALJ provided sufficient reasons for

rejecting the opinions of Ms. Duchovich. *Voight v. Colvin*, 781 F.3d 871, 878 (7th Cir. 2015).

Moreover, the Commissioner impermissibly offers a reason that the ALJ did not mention in

considering nurse Duchovich's opinions: third-party function reports from Plaintiff's husband and

a friend.  This is an impermissible *post hoc* rationalization. *SEC v. Chenery Corp*., 318 U.S. 80,

90-93 (1943).  In any event, a review of the third-party statements supports the medical opinions

concerning Plaintiff's pain affecting her mood and social interactions. (Tr. 329, 332). Neither the

Commissioner nor the ALJ have provided an explanation as to why it was improper for Ms.

Duchovich to consider Plaintiff's pain, particularly since pain can have a psychological

component. Moreover, the opinion of Ms. Duchovich was more recent and based on a more

complete record than the state agency psychological consultant's opinions. *Lanigan v. Berryhill*,

865 F. 3d 558, 563-564 (7th Cir. 2017).

     Clearly, the ALJ committed legal error in evaluating the opinion evidence, and also failed

to fully and fairly evaluate the medical evidence. She also failed to logically connect the medical

findings to her conclusion that the treating source opinions are entitled to "little weight." *Craft v.*

*Astrue*, 539 F.3d 668, 677-678 (7th Cir. 2008) (An ALJ must create an accurate and logical

bridge between the evidence, including the recitation of the medical evidence, and conclusions.).

Thus, remand is required.

     Next, Plaintiff argues that the ALJ improperly discounted Plaintiff's symptom testimony.

With regard to Plaintiff's testimony concerning her symptoms, the ALJ concluded that the

"claimant's medically determinable impairments could reasonably be expected to cause the

alleged symptoms; however, the claimant's statements concerning the intensity, persistence and

limiting effects of these symptoms are not entirely credible for the reasons explained in this

decision." (Tr. 26). In particular, the ALJ thought the medical record did not support the severity of Plaintiff's impairments and claimed that her daily living activities were not "limited to the extent one would expect, given the complaints of disabling symptoms." (Tr. 26-27). With reference to the medical records, the ALJ claimed that the records showed treatments have been effective in providing relief of Plaintiff's symptoms with normal gait after recovering from surgery, normal strength, and negative straight leg raising. (Tr. 27). Again, Plaintiff argues that the ALJ used an impermissible "sound-bite" approach to reviewing the medical evidence. Plaintiff claims that, although she has reported episodic improvement, the longitudinal records indicates that she has experienced ongoing disabling pain and limitations—even after undergoing implantation of a spinal cord stimulator and surgical fusions of both SI joints. This is confirmed by the medical records of Plaintiff's treating sources and by the recent medical opinions. The ALJ also failed to consider Plaintiff's medically chronic pain disorder at step two, which also contributed to the errors in the evaluation of the symptom testimony.

Plaintiff contends that the ALJ's reliance on Plaintiff's daily living activities to support her credibility finding is also misplaced. Plaintiff claims that her activities are not inconsistent with the restrictions from Dr. Reecer, and the activities likewise fail to detract from the credibility of her symptom testimony. (Tr. 248-255, 281-288, 290-297, 334-341). Clearly, the evidence reflects that Plaintiff is quite limited in what she is able to accomplish, that she does not perform tasks for long periods of time, and requires help from her mother and her husband in caring for her son and in performing household chores. (*Id.*). With regard to camping, Plaintiff testified that she went camping with her family to a state park once in the previous year and had to drive about forty-five minutes to get there. (Tr. 64). She had her crutches with her and had to use them to

walk to a porta-potty. (Tr. 66).

Plaintiff argues that the ALJ has committed a common legal error by failing to recognize "[t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . . . The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012); *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005). Like many claimants, Plaintiff must do things for herself despite the pain she experiences and she has learned to accomplish tasks in a manner that minimizes her suffering, but likely would not be appropriate in a job setting or consistent with full-time work activity. The Seventh Circuit has recognized that even persons who are disabled learn to cope with their impairments. *Gentle*, 430 F.3d at 867.

Plaintiff argues that the ALJ has also failed to sufficiently account for factors supporting Plaintiff's symptom testimony as described in Social Security Ruling 96-7p.14. For example, Plaintiff has been compliant with conservative treatment measures and gone extreme means to relieve her pain, including implantation of a spinal cord stimulator and surgical fusion of both SI joint. She also takes significant amount of pain medications to try to control her pain. Additionally Plaintiff argues that the ALJ has failed to take into account the combined effects of all of Plaintiff's physical and mental impairments on her symptoms and functioning and that it is not apparent that the ALJ considered these factors together in evaluating Plaintiff's credibility and assessing her RFC. *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

In response, the Commissioner correctly notes that a credibility finding will not be

overturned unless it is "patently wrong." In *Cullinan v. Berryhill*, the Seventh Circuit clarified that a credibility determination is "patently wrong" when it "relies on inferences that are not logically based on specific findings and evidence." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). In the present case, the factors cited by the ALJ to discredit Plaintiff are not logically based on specific findings, and the Commissioner has not refuted Plaintiff's arguments to the contrary. The Commissioner claims that the recitation to Plaintiff's daily activities demonstrates that her activities are inconsistent with debilitating limitations. But the activities cited are precisely the type that Seventh Circuit has repeatedly found are insufficient to reject a claimant's reports of disability. *Cullinan,* 878 F.3d 604-605 (internal citations omitted). Like *Cullina*n and the numerous cases cited therein, the ALJ has merely recited activities without explaining in what manner the activities are inconsistent with Plaintiff's claim of disability.

The Commissioner has not responded to and presumably concedes that the ALJ did not sufficiently account for the factors supporting Plaintiff's symptom testimony, including her course of treatment involving extreme measures to relieve her pain. The Commissioner also appears to concede that the ALJ failed to account for Plaintiff's chronic pain disorder at step two and that she did not account for the combined effects of all of Plaintiff's impairments—including both her physical and mental impairments.

Therefore, contrary to the Commissioner's assertion, the ALJ's evaluation of Plaintiff's symptom testimony is not entitled to deference in this case. The ALJ's errors in failing to logically connect the reasons for the credibility assessment to her conclusions and inappropriate selective review of the evidence undermined the ALJ's findings. The ALJ's errors and "sound-bite" approach to reviewing the evidence resulted in an improper evaluation of Plaintiff's

subjective complaints, as well as an improper evaluation of the medical opinion evidence, and unsupported RFC assessment. Thus, remand is necessary.

Next, Plaintiff argues that the ALJ's listing analysis is not supported by substantial evidence. Dr. Reecer opined that Plaintiff's impairments were as severe as impairment listing 1.03 (Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-bearing Joint). (Tr. 1189). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.03. The ALJ rejected this opinion and found that the listing was not satisfied because the evidence did not establish the requisite inability to ambulate effectively. (Tr. 20). The Plaintiff notes that the ALJ's interpretation of "effective ambulation," appears to be based on the need for a walker to ambulate, but the definition of "effective ambulation" is not defined by whether an assistive device is required let alone a walker. Impairment listing 1.00B2b includes definitions of ineffective ambulation and includes the inability to walk a block at a reasonable pace on rough or uneven surfaces. In the present case, the evidence reflects an inability to ambulate effectively since Plaintiff's SI joint surgery in November 2014.

Plaintiff further argues that the state agency opinions concerning the listing are not reliable in light of the significant new evidence and diagnoses, particularly since Plaintiff underwent surgical arthrodesis after SI joints after the state agency reviewed her case. *Jelinek v. Astrue*, 662 F.3d 805,812 (7th Cir. 2011). Plaintiff contends that before rejecting Dr. Reecer's opinion concerning Listings 1.03, the ALJ should have also consulted a medical expert given the updated evidence which suggested that Plaintiff's impairments individually or in combination met or equaled one or more impairment listings. *See* Social Security Ruling 96-6p. Plaintiff concludes that, the ALJ's assumption of the absence of equivalency without consulting a medical

expert in this case is error given the plethora of evidence suggesting otherwise. *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015).

In response, the Commissioner does not dispute Plaintiff's argument that the state agency medical consultants' opinions are not reliable in light of the new evidence and diagnoses given that Plaintiff underwent surgical arthrodesis of both SI joints after the state agency reviewed her case. Because no medical expert reviewed Listing 1.03 (Reconstructive Surgery or Surgical Arthrodesis of a Major Weight-bearing Joint), the ALJ's analysis is unsupported, particularly in light of the medical evidence and opinions suggesting that Plaintiff's impairments met or equaled Listing 1.03. The Commissioner claims that Plaintiff has failed to demonstrate that she met the definition of "ineffective ambulation," despite citation to ample evidence supporting this, including the opinion of Dr. Reecer who specifically reported that Plaintiff underwent surgical arthrodesis of the right SI joint in November 2014 and then the left SI joint in October 2015 and that there was only a short period in 2015 when she ambulated without an assistive device. Even with the assistive device, Plaintiff was unable to sustain walking at a reasonable pace or on uneven surfaces. (Tr. 1188).

In any event, even if every element of the listing is not precisely satisfied, Plaintiff's impairments may medically equal a listing. The Commissioner has failed to defend the ALJ's error in assuming the absence of equivalency without consulting a medical expert. This is legal error warranting remand. *Minnick v. Colvin*, 775 F.3d 929, 936 (7th Cir. 2015).

<u>Conclusion</u>

On the basis of the foregoing, the decision of the ALJ is hereby REMANDED for further proceedings consistent with this Opinion.

Entered: May 9, 2018.

s/ William C.  Lee
William C. Lee, Judge
United States District Court
